```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Mark L. Johnson

    v.                                    Civil No. 11-cv-245-JD
                                            Opinion No. 2011 DNH 188

Michael Astrue, Commissioner,
Social Security Administration


## O R D E R

Mark L. Johnson seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for social security disability insurance benefits and supplemental security income under Title II and Title XVI. Johnson challenges the decision, contending that the Administrative Law Judge ("ALJ") failed to properly assess the medical opinions in determining his residual functional capacity. The Commissioner moves to affirm the decision.


## Background[1]

Johnson filed applications for benefits, alleging a disability beginning on March 16, 2007, due to degenerative disc

---

[1] The background information is taken from the parties' joint statement of material facts, which are summarized only to the extent necessary for this decision. See LR 9.1.(b)(2).

disease, depression, cerebral hemorrhage, and Barrett's esophagus.  Following a hearing before an ALJ, his applications were denied on October 7, 2009.  The Decision Review Board, however, vacated the decision and remanded the case to the ALJ for further proceedings.  A second hearing was held on November 8, 2010, and the ALJ again denied Johnson's application.  When the Decision Review Board failed to complete a timely review, the ALJ's decision became the final decision of the Commissioner.

A.  <u>Medical Records Pertaining to Physical Impairment</u>

Johnson had a history of back pain that began to worsen in November of 2006.  An x-ray on November 7, 2006, showed degenerative disc disease with disc space narrowing at L4 to S1 of the lumbar spine area.  An MRI done three days later also showed an L3-L4 disc protrusion with L3 disc disease.

On January 15, 2007, Johnson began back pain treatment with Dr. Jan Slezak at Interventional Spine Medicine.  His neurological examination was normal.  Dr. Slezak recommended epidural steroid injections for his pain.  At first, the injections reduced Johnson's pain significantly.  By March of 2007, however, Johnson reported that he did not think the injections were helping.  Although his distal neurovascular

examination was "grossly intact," Johnson decided that he wanted to proceed with surgery.

Dr. Glenn S. Lieberman concluded that surgery was appropriate based on the MRI results and recommended a discectomy on the left side at L3-L4. The procedure was done on March 16, 2007. Johnson reported that the radicular symptoms were gone although he still had significant pain in his back. A wound infection was treated with antibiotics. On April 23, 2007, Dr. Liberman cleared Johnson for full duty work, and Johnson did not return for his follow-up appointment in May.

On November 17, 2007, Johnson went to the emergency room because of back pain. Examination showed that his back was not tender but that he did have a decreased range of motion. An x-ray showed moderate degenerative changes in his lumbar spine. He was diagnosed with a lumbar spasm and strain. He was seen again on November 21 for back pain, and the examination showed no abnormalities except a mildly limited range of motion in the lumbar area.

On the same day, Susan Thienon, ARNP, completed a functional capacity assessment. Thienon found that Johnson could do up to four hours of sedentary work for three days in a week with certain accommodations. She indicated that Johnson would require an ability to change position every fifteen to twenty minutes,

could not lift or carry any weight, could push or pull ten to twenty pounds occasionally, and had several postural limitations. Thienon further indicated that her assessment was based on Johnson's current condition and that she expected him to improve over the next one to three months.

An MRI of the lumbar area on November 29, 2007, showed multiple level degenerative disc disease with space narrowing, loss of disc signal intensity, and a mild disc bulge.  On December 6, 2007, a note was made that the MRI showed no evidence of cord or nerve compression or disc herniation.

At an appointment on February 7, 2008, Dr. Lieberman recommended steroid injections rather than surgery to treat Johnson's back pain.  On February 27, 2008, a neurological examination showed pain at forty-five degrees of flexion and at eighty degrees on straight-leg raising while sitting.  Dr. Slezak gave Johnson a steroid injection on March 7, 2008, but Johnson reported on April 10 that the injection did not help and that he wanted to try chemical pain management.  At a mental status examination on April 22, 2008, Johnson's gross motor skills appeared to be intact, but he sat stiffly and seemed to have significant pain when he got up from his chair at the end of the examination.  Johnson had another injection in May.

Dr. Matt Masewic reviewed Johnson's medical records and provided a residual functional capacity assessment on March 5, 2008. Based on his review, Dr. Masewic thought that Johnson could lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk for about six hours in an eight-hour work day; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Masewic also wrote that Johnson's allegations of pain were not credible based on his review of the evidence.

In August of 2008, Johnson reported he was not taking any medication for pain. He had another injection in September of 2008. At an appointment on September 30, Johnson's gait was normal, but he reported occasional pain in both legs. He had another injection on October 14, 2008. He did not go to his follow-up appointment with Dr. Lieberman on October 24, 2008. He was treated at the emergency room on November 15, 2008, for back pain due to back spasm.

In December of 2008, Johnson had a radiofrequency denervation procedure of the left lumbar facet joint and reported that the pain decreased to zero.[2] Johnson also saw Dr. Robert Mathes for back pain and a tingling sensation in both legs. His

---

[2] The parties did not provide a definition for the procedure. See LR 9.1(b)(2).

gait was stiff but other tests had normal results.  He was diagnosed with chronic low back pain, restless leg syndrome, and serotonin deficiency.

On December 22, 2008, and February 18, 2009, Johnson saw Dr. Frank Graf for orthopedic consultative examinations that were arranged by Johnson's counsel for purposes of his social security application.  Dr. Graf noted Johnson's history of chronic back pain and his recent intracranial hemorrhage because of excessive ibuprofen use.  In Dr. Graf's opinion, Johnson had a failed back surgery, multi-level degenerative disc disease and facet joint changes, persistent musculoskeletal pain, depression, and cerebrovascular hemorrhage.  Because of his back impairment, Dr. Graf found that Johnson met and equaled the criteria for the impairment listing at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.  Dr. Graf also found that Johnson's mental impairment met the requirements for the listing at § 12.04.  Dr. Graf's conclusion was that Johnson had been disabled since September of 2006.

Johnson was admitted to the hospital on February 5, 2009, because of a headache that began on January 29.  On examination, Johnson was pleasant, cooperative, alert, oriented, and with no deficits or abnormalities.  Following a CT scan of the brain, he was diagnosed with a right caudate hemorrhage that was suspected

to have been caused by overuse of anti-inflammatory drugs. On follow up, Johnson continued to have a mild headache, but he remained neurologically intact. His examination was otherwise normal in all areas, including a normal gait. He was instructed not to lift, carry, push, or pull any weight and not to use anti-inflammatory medications. His last follow-up appointment was on February 23, when he was told that he could return to normal activities.

On March 24, 2009, Johnson saw Physician's Assistant Kelly Doherty for follow-up after the radiofrequency denervation procedure. Johnson reported that he still had back pain and was disappointed with the lack of relief from the procedure. His neurological examination was normal. A spinal MRI was done on April 3, 2009, which showed broad disc bulges at L2-3, L3-4, and L4-5; small disc protrusion at L5-S1; and moderate to severe joint disease.

Johnson had a gastroesophageal junction biopsy on September 11, 2009. The results did not show cancer, and he was advised to continue to monitor his reflux disease.

Johnson saw Dr. Minh T. Tran on November 5, 2009, for an evaluation of his back problems. Dr. Tran noted that Johnson's gait was not antalgic, meaning that his gait was normal and did not indicate pain. Johnson's pain increased with lumbar range of

motion but his strength and sensation were normal.  His straight leg raise test was normal except that it increased his back pain.  Dr. Tran assessed persistent low-back pain with multilevel degenerative disc disease and referred Johnson for a "lumbar unloader brace."  Dr. Tran also noted that Johnson was financially unable to pursue additional therapy.

     B.   <u>Medical Records Pertaining to Mental Impairment</u>

The New Hampshire Disability Claims Adjuster referred Johnson for a consultative mental examination with Stefanie L. Griffin, Ph.D., which was done on April 22, 2008.  The purpose of the examination was to assess Johnson's claim of functional loss caused by depression, memory problems, and social interaction issues.  Dr. Griffin diagnosed a major depressive disorder and a pain disorder.  Based on the effects of Johnson's disorders, Dr. Griffin thought he would have mild to moderately reduced understanding and memory, social functioning, concentration, and adaptation to work situations.

Michael Schneider, Psy.D., reviewed Johnson's records pertaining to mental impairments and completed a psychiatric review technique form on May 2, 2008.  Dr. Schneider found that Johnson's mental impairments caused moderate limitations in his daily living activities, ability to maintain social functioning,

and ability to maintain concentration, persistence, or pace.  Dr. Schneider provided a residual functional capacity assessment that Johnson was able to understand, remember, and carry-out short and simple instructions without special supervision; to maintain adequate attention and complete a normal work week; and to interact appropriately and accommodate changes in the workplace as long as supervisors were not overly critical.

Johnson had a follow-up appointment regarding depression with Ms. Thienon on June 26, 2008.  Ms. Thienon's note indicates that he was prescribed medication for depression in November of 2007.  Johnson reported improvement but that he still struggled with depression.  Ms. Thienon increased Johnson's medication dose.

Johnson attended seven therapy session at Community Partners between June and August of 2008.  He was diagnosed with dysthymic disorder, meaning a chronically depressed mood that has lasted for at least two years.  During therapy sessions, Johnson was engaged and reported a reduction in depression and an increase in communication skills.  He was given a Global Assessment Score of

65.[3] Johnson did not continue with his therapy sessions after August.

At an appointment with Ms. Thienon in December of 2008, Johnson reported that his mood was "really good." At another appointment on August 13, 2009, Johnson said that he had responded well to the medication, without side effects. Ms. Thienon noted that his depression was controlled with medication.

On June 24, 2010, Dr. Thomas P. Lynch did a mental health evaluation of Johnson. Dr. Lynch noticed that Johnson's speech was excessively slow and soft and that he had limited affect. Johnson said that his mood was generally edgy and irritated. Johnson showed no evidence of a thought disorder, and he was oriented, clear, and alert. In a mental residual functional capacity assessment, Dr. Lynch stated that Johnson generally had mild and moderate mental limitations, with a marked limitation in his ability to understand and remember complex instructions and to make judgments on complex work-related decisions.

C. <u>Hearing</u>

A hearing was held on November 8, 2010. Johnson testified that his pain was traveling to his neck, that he was lying down

---

[3]A Global Assessment Score is a psychiatric measure of a person's overall functioning. <u>Jelinek v. Astrue</u>, --- F.3d ---, 2011 WL 5319852, at *1 (7th Cir. Nov. 7, 2011). A score of 65 indicates mild symptoms with generally good functioning. <u>Petrie v. Astrue</u>, 412 Fed. Appx. 401, 406 (2d Cir. 2011).

most of the time, and that he got only about two hours of uninterrupted sleep at a time. He said that he could drive for about ten miles comfortably but when he sat too long, his legs would start to ache and his hands and feet would go numb. Lying down relieved the symptoms. Johnson explained that although he was suffering from depression, he was not receiving treatment because he could not afford it other than his appointments with Ms. Thienon. Johnson wore a back brace at the hearing, which he said was uncomfortable, and he said that he had been wearing it for about a year.

    Dr. John D. Axline, an orthopedic surgeon, testified as a consultative medical expert at the hearing. Dr. Axline explained that he had reviewed Johnson's records and had enough information to form an opinion. He testified that none of Johnson's impairments met or equaled a condition listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. In Dr. Axline's opinion, Johnson could lift ten pounds frequently and twenty pounds occasionally, sit for two hours at a time and for six hours total in an eight-hour work day, stand for one hour at a time and for four hours in an eight-hour day, and walk for one hour at a time and for two hours in an eight-hour day. He found no other restrictions on Johnson's functional capacities. Dr. Axline said that his opinion differed from other opinions in the record but he did not believe the other opinions were supported by the record facts.

A vocational expert also appeared by telephone at the hearing. In response to several hypothetical questions that incorporated various limitations and restrictions, the vocational expert gave her opinion about what work the hypothetical person could do. The only hypothetical for which she ruled out all work was if the person could only occasionally carry ten pounds, could sit for only five to ten minutes at a time, could walk for only ten minutes, could not work an eight-hour day, could never do postural activities, and had marked to moderate difficulties with understanding, remembering, and interacting with supervisors and peers.

D. <u>Decision</u>

The ALJ found that Johnson had engaged in substantial gainful activity since his alleged onset date of March 16, 2007, when he returned to work at the end of April, 2007, and worked there until June, 2007, and when he worked as driver for Northeast Ice Cream until September, 2007. Since September 30, 2007, Johnson had not worked. The ALJ found that Johnson had severe impairments due to degenerative disc disease of the lumbar spine, depression, and Barrett's esophagus but that none of his impairments met or equaled a listed impairment.

Considering Johnson's impairments, the ALJ determined that he had a residual functional capacity for light work with

restrictions for occasionally doing postural activities.  He also found that Johnson could understand, remember, and carry out short and simple instructions, complete a normal work week, and interact appropriately with supervisors and peers.  The ALJ found that Johnson could not return to his former work but that other work existed in the relevant economies that Johnson could do.  Based on those findings, the ALJ determined that Johnson was not disabled.

### Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a). The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. §§ 404.1520 & 416.920. The claimant bears the burden, through the first four steps, of proving that his impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner determines whether work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## Discussion

Johnson contends that the ALJ failed to properly assess the medical opinions in the record. As a result, Johnson argues, the Commissioner's decision is not supported by substantial evidence.

In assessing a claimant's limitations and impairments, the ALJ evaluates all of the medical opinions in the record. §§ 404.1527(d) & 416.927(d). The ALJ attributes weight to a medical opinion based on the nature of the relationship between the medical provider and the claimant. §§ 404.1527(d) & 416.927(d). An opinion based on one or more examinations is entitled to more weight than a non-examining source's opinion, and a treating

14

source's opinion, which is properly supported, is entitled to more weight than other opinions. Id. A treating source's opinion on the nature and severity of the claimant's impairments will be given controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."
§§ 404.1527(d)(2) & 416.927(d)(2).

The ALJ also attributes weight to an opinion based on whether a medical source provides relevant evidence to support the opinion, whether the opinion is consistent with the remainder of the record, the specialization of the medical source, and other factors including the amount of understanding the medical source has about the disability benefit system. §§ 404.1527(d) & 416.927(d). In addition, the ALJ evaluates the opinion of a medical expert who is asked to provide an opinion for purposes of a disability determination using the same considerations. §§ 404.1527(f)(2)(iii) & 416.927(f)(2)(iii).

 A. <u>Opinions About Back Condition</u>

Johnson contends that the ALJ erred in failing to give more weight to Dr. Graf's opinion than to Dr. Axline's opinion. Johnson argues that Dr. Graf's relationship with him, which included a physical examination, weighs in favor relying on his

opinion. He also argues that Dr. Axline's opinion is inconsistent with the medical record.

The ALJ explained in his decision that Dr. Graf's opinion was given little weight because it was based on a single examination after he was hired by Johnson's counsel and because his opinion was not supported by the record evidence. Specifically, the ALJ noted that Dr. Graf reported Johnson could walk for only ten minutes and could not walk more than a block on an uneven surface while entries in his medical records indicated that he could walk his dog for a half mile, walk for thirty minutes, and walk for a mile. The ALJ also noted that Dr. Graf wrote that Johnson could not lift anything but that he could carry ten pounds occasionally and stated that Johnson experienced significant confusion following his cerebral hemorrhage when Johnson denied confusion.

Further, the ALJ noted that Dr. Axline testified that Dr. Graf was wrong that Johnson's back condition would meet the requirements of the listing at § 1.04 and misinterpreted the record as to Johnson's pain with straight leg testing. Dr. Axline also testified that Dr. Graf's limitations were not supported by his own examination or the record evidence. The ALJ did not give Dr. Axline's opinions any particular weight except to consider his testimony for purposes of evaluating the weight to give Dr. Graf's opinions.

Johnson argues that Dr. Axline misinterpreted the record by acknowledging Johnson's positive signs for pain but finding that he is not orthopedically impaired and by ascribing the referral for a back brace to a nurse practitioner when Dr. Tran made the referral.  Johnson also cites Dr. Palacio's statement that Johnson was disabled because of back problems.  Johnson further notes that his use of over-the-counter ibuprofen for pain to the extent of causing a cerebral hemorrhage is significant.

The ALJ gave Dr. Masewic's opinion great weight for purposes of determining Johnson's residual functional capacity. The ALJ found that Dr. Masewic's opinions were consistent with and supported by the record evidence.  The ALJ also noted that Dr. Masewic is a general practitioner and is familiar with the social security regulations.  The ALJ's residual functional capacity assessment is consistent with Dr. Masewic's opinion. Johnson does not challenge the ALJ's reliance on Dr. Masewic's opinion.

Dr. Graf did not have a treating relationship with Johnson, and his opinions were based on a single examination at the request of Johnson's counsel.  As the ALJ explained, Dr. Graf's opinions are far more restricted than the record supports. Although the record can be interpreted to provide some evidence of greater restrictions than the ALJ found, the record also includes substantial evidence that supports the ALJ's findings.

17

The Commissioner resolves such conflicts in the evidence, and properly did so in this case.  See Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

    B.   Opinions about Depression

Johnson asserts that he met the listing for mental disorders at § 12.04.  He cites the opinion of Dr. Lynch, which he reviews in detail.  In conclusion, however, Johnson states that he agrees with Dr. Lynch's opinion that he has a severe mental impairment but disagrees with his opinion that Johnson does not meet a listings level of impairment.  Johnson argues that Dr. Lynch's opinions about his impairments are inconsistent with his conclusion that Johnson does not meet the requirements of § 12.04.  Johnson also discusses Dr. Griffin's opinion, but without reference to § 12.04 or the ALJ's decision.

As such, Johnson does not challenge the ALJ's assessment of opinion evidence but instead argues that Dr. Lynch's conclusion was wrong.  Johnson cites no opinion that found he met the listing requirements.  Therefore, Johnson provides no basis to review the ALJ's evaluation of the medical evidence pertaining to depression.

C.  Opinions about Cerebral Hemorrhage and Barrett's Esophagus

Johnson acknowledges that his cerebral hemorrhage and the condition caused by Barrett's esophagus were not severe impairments.  He states that the hemorrhage had only a minimal impact on his ability to function.  He states, however, that taken along with his back condition and depression, the impairments together make him unable to maintain gainful employment.

Johnson does not address any medical opinion evidence in this context or otherwise challenge the ALJ's specific findings. His conclusory statement that his impairments, taken together, prevent him from working is insufficient to raise an issue for review.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); see also Wall v. Astrue, 561 F.3d 1048, 1066 (10th Cir. 2009); Charles v. Astrue, 2011 WL 3206443, at *9 (E.D. Tenn. April 20, 2011); Williamson v. Astrue, 2010 WL 2858834, at *10 n.1 (N.D. Ill. July 16, 2010).

<u>Conclusion</u>

For the foregoing reasons, the claimant's motion to reverse the Commissioner's decision (document no. 6) is denied. The Commissioner's motion to affirm (document no. 8) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

November 15, 2011

cc: Peter J. Mathieu, Esquire
    Gretchen Leah Witt, Esquire